**SIGNED THIS: December 13, 2005**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| NATHAN JAMES SIMMONS, ) | |
| ) | Case No. 05-73749 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| NATHAN JAMES SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 05-7138 |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

# O P I N I O N

The issue before the Court is whether the Debtor's student loan obligations owed to the United States Department of Education

-1-

should be discharged pursuant to 11 U.S.C. § 523(a)(8).

Nathan Simmons filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 15, 2005. On July 27, 2005, Mr. Simmons filed a letter with the Bankruptcy Clerk's office stating that paying the student loans listed on his schedules would create an "undue hardship." The letter was taken as a Complaint to Determine Dischargeability pursuant to Section 523(a)(8) of the Bankruptcy Code. Summons issued and the U.S. Department of Education filed its appearance and Answer. The matter was tried on December 1, 2005. Mr. Simmons represented himself in the filing of both the original case and the adversary proceeding as well as at trial.

Mr. Simmons attended several different institutions of higher learning during the period from 1990 through 1999. Throughout that time period, he obtained numerous student loans which had a combined principal balance remaining due at the time of trial of approximately $53,000. Ultimately, Mr. Simmons obtained a bachelor's degree from the University of Illinois at Springfield. He is currently employed by the State of Illinois as a caseworker at the Department of Human Services earning approximately $41,000 annually.

Mr. Simmons is the father of 10 children ranging in age from 14 to 2 years. He has custody of two children and appears to be their sole source of support. Court-ordered child support is

deducted from his paycheck in the amount of $436.10 every two weeks for the support of four other children. Mr. Simmons voluntarily pays the mother of two more of the children $274 per month for assistance with daycare expenses. He pays no support for the other two children but expects that he may soon be subject to legal proceedings to establish support obligations for those children.

Mr. Simmons' two-week paycheck entered into evidence at trial disclosed the following income and deductions:

| | |
|---|---:|
| Gross pay: | $1,729.00 |
| Deductions for taxes, insurance, etc.: | ($ 556.41) |
| Child support: | ($ 436.10) |
| Net pay: | $ 736.49 |

Converted to a monthly figure[1], Mr. Simmons income and deductions are as follows:

| | |
|---|---:|
| Gross pay: | $3,717.35 |
| Deductions for taxes, insurance, etc.: | ($1,196.81) |
| Child support: | ($ 937.61) |
| Net pay: | $1,582.93 |

Mr. Simmons presented a budget showing $1,788 in monthly expenses. These expenses include the $274 paid for daycare for two

---

[1] The debtor calculated his monthly figure presented at trial by simply doubling his two week numbers. The Court has calculated the monthly figure using 4.3 weeks per month, which is more precise. The difference in these two methods of calculation did not impact the decision in this case.

children.  Mr. Simmons testified that he and his two daughters live in an apartment in a neighborhood which he feels is unsafe but he does not have the financial resources to move or to pay a higher monthly rent.  His monthly budget contains a line item of only $200 for food for three people and contains no line items for personal toiletries or for household paper, cleaning, or laundry products.  The budget contains no line item for any contingencies or emergencies.

Mr. Simmons made six payments totaling $449 on his student loans during the period from December, 2003 through August, 2004.  An additional $9,000 was paid as a result of the interception of an income tax refund.  Mr. Simmons testified that the voluntary payments he made were during the time after he had obtained his current employment but before his current support obligations had all been established.

Mr. Simmons was served with a garnishment notice by the U.S. Department of Education in early 2005.  He responded by filing an appeal based on his current financial condition.  He prevailed on appeal and the garnishment was canceled because the garnishment would have created an "undue financial hardship."  The decision on appeal indicated, however, that the garnishment might be reinstated in the future if payment arrangements were not made.

Mr. Simmons investigated the Department of Education's Income Contingent Repayment Program.  He was told that based on his

income, his monthly payment would be in excess of $700 to qualify for the program.  Apparently, that payment amount was calculated based on Mr. Simmons being part of a family of three people.  The support paid for children not in his custody was not considered in calculating what he should pay to qualify for the program.  At trial, the Department presented a chart showing how payments are calculated to qualify for the Program.  The calculation appears to be based on a formula using the annual income of the participant, the family size of the participant, and the amount of outstanding student loans.  The chart presented at trial used a family of three to calculate Mr. Simmons' required payment.

At trial, Mr. Simmons presented two witnesses in addition to himself.  The first witness, Frances Smith, also works at the Illinois Department of Human Resources and has known Mr. Simmons for approximately five years.  She testified that over the last couple of years, she has observed a change in Mr. Simmons in that he has become depressed, very stressed, and anxious due to his financial struggles.  She testified that she is aware of what Mr. Simmons earns and she does not know how he is able to meet all of his obligations each month.

Mike Kuzola also testified at the request of Mr. Simmons.  Mr. Kuzola first became acquainted with Mr. Simmons when Mr. Simmons was in high school and wrestled on the same team with Mr. Kuzola's son.  Mr. Kuzola holds both a bachelor's and a master's degree in

counseling and is employed by Heritage Behavior Health Services. Through that employment, Mr. Kuzola is assigned to do work at the Illinois Department of Human Services and became reacquainted with Mr. Simmons there.  Mr. Kuzola testified that for the last several years, Mr. Simmons has sought him out two or three times a week to talk and to seek guidance and counseling for his problems.  Mr. Kuzola testified that he believed Mr. Simmons to be nervous, anxious, and depressed due to his financial problems.  Mr. Kuzola stated that he believed that Mr. Simmons was doing the right thing by attempting to maintain relationships with his children and by devoting his resources to supporting them to the best of his ability.

In order for Mr. Simmons to obtain a discharge of his student loans based on "undue hardship", the Seventh Circuit requires that he prove the following by a preponderance of the evidence:

1. That he could not maintain, based on his current income and expenses, a "minimal" standard of living for himself and his dependents if he were required to repay the loans;

2. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and

3. That he has made good faith efforts to repay the student loans.

Matter of Roberson, 999 F.2d 1132 (7th Cir. 1993) (adopting the three-part test set forth by the Second Circuit in Brunner v. New

York State Higher Education Services Corp., 831 F.2d 395 (2nd Cir. 1987), the so-called "Brunner test"); Goulet v. Education Credit Management Corp., 284 F. 3d 773, 777 (7th Cir. 2002) (Debtor must prove each element of the three-part test by a preponderance of the evidence).  *See also* 11 U.S.C. 523(a)(8).

The first prong of the Brunner test requires an analysis of Mr. Simmons' current standard of living.  As set forth above, he makes at least $41,000 per year, which for many people would provide a standard of living which would exceed the "minimal" standard.  In Mr. Simmons' case, however, it is his expenses - not his income - which limit the standard of living of Mr. Simmons and his dependents.  After the deduction of $937 in child support from his payroll check, and the payment of $274 for daycare for two other children, Mr. Simmons has only about $1,300 per month to support himself and the two children in his custody.  His budget contains no luxuries.  He pays necessary expenses such as rent, utilities, and insurance monthly.  As discussed above, his line item for food in the amount of $200 appears low considering that there is no separate line item for other items often purchased at grocery stores such as personal toiletries and household paper, cleaning, and laundry products.  Likewise, his line item of $125 for transportation is sufficient to cover a tank of gas per week and an occasional oil change but provides no cushion for any other auto maintenance.  Mr. Simmons calculates his monthly expenses to

be a little over $1,500 after payment of the daycare. Accordingly, he is approximately $200 short each month. Also, he faces the prospect of additional child support orders being entered with respect to two children for whom he currently provides no support.

At trial, the U.S. Department of Education did not seriously suggest that Mr. Simmons could make any meaningful payment on his student loans at this time. No argument was made that any line item in his monthly budget was overstated or unreasonable. Accordingly, as to the first prong of the Brunner test, the Court finds that Mr. Simmons has met his burden proof. Mr. Simmons could not maintain a minimal standard of living for himself and his dependents based on his current income and expenses if he were required to repay his student loans.

The second prong of the Brunner test requires an analysis of the factors which contribute to Mr. Simmons inability to pay his loans and a determination as to whether additional circumstances exist which indicate that his inability to make payments will persist for a significant portion of the repayment period. The Seventh Circuit has held that the dischargeabilty of a student loan cannot be granted simply upon the current inability to pay but should be done only upon a "certainty of hopelessness." Matter of Roberson, *supra*, 999 F.2d *at* 1136, *citing* In re Briscoe, 16 B.R. 128, 131 (Bankr. S.D. N.Y. 1981). "Certainty of hopelessness" is a tough standard and one that can generally only be met by the

truly disabled or debtors whose repayment periods have already run so that the certainty of their inability to pay for the entire period is a matter of fact rather than speculation. *See,* In re Lewis, 276 B.R. 912 (Bankr. C.D. Ill. 2002).

No evidence was presented at trial as to the amount of the repayment period remaining for Mr. Simmons' student loans. Because he finished his education not more than six years ago, this Court must presume that the initial repayment period has not yet run. Thus, this Court must look into the future to determine the likelihood that Mr. Simmons' situation will change, allowing him the ability to make meaningful payments on all or some of his student loans.

Mr. Simmons presented himself as a bright, articulate, hardworking, young man.[2] Although he and his witnesses presented evidence of his current depression and anxiety regarding his financial condition, he does not appear to have any true physical, mental, or legal disability which is likely to impair his future. He has a college degree and a good job.

As stated above, Mr. Simmons' financial problems are brought on not by an inability to earn a decent wage but rather by the fact that he has fathered 10 children and is currently providing some

---

[2] The Court was very impressed with Mr. Simmons' efforts in representing himself. Most impressive was the fact that Mr. Simmons had educated himself on the Brunner test and organized his closing remarks to address each of the three prongs.

-9-

degree of support for eight of those children. Supporting that many people would be financially difficult for someone earning twice what Mr. Simmons is making. Mr. Simmons will not, however, have to support all of these children indefinitely. His oldest daughter is 14, so his support obligations for her will end in approximately four years. The mothers of these children are also responsible to support the children. There are many variables which may come into play during the next several years which could increase or decrease the amounts which Mr. Simmons pays to support his children.

Mr. Simmons has not met his burden of proof to show that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. The Court cannot find a "certainty of hopelessness."

Although Mr. Simmons has not met his burden at this time, the Court understands that it is quite possible that Mr. Simmons' state of affairs will persist throughout his entire repayment period, whatever that period may be. Accordingly, although the finding that the second prong of the Brunner test has not been met precludes discharge at this time, an order of deferral will be entered and will be discussed in more detail below.

The third prong of the Brunner test requires an analysis of whether Mr. Simmons has made a good faith effort to pay his student loans. Mr. Simmons made a series, albeit a short series, of

payments after finding employment and before all of his child support obligations were imposed. He investigated the Income Contingency Repayment Program which is often considered as a factor in determining good faith. In re Alderete, 412 F.3d 1200, 1206 (10th Cir. 2005); In re Tirch, 409 F.3d 677, 682 (6th Cir. 2005). Mr. Simmons was unable to avail himself of the Program because he would have had to pay $700 per month which he simply could not do. The U.S. Department of Education conceded in closing arguments that based on all of the circumstances presented, Mr. Simmons had probably acted in good faith in attempting to deal with his student loan obligations. The Court finds that Mr. Simmons met his burden of proof on the third prong of the Brunner test and that Mr. Simmons did, in fact, make a good faith effort to pay his student loans.

In Roberson, *supra*, the Seventh Circuit approved of the Bankruptcy Court's deferment of student loan payments in view of that Debtor's current inability to pay. The Seventh Circuit also agreed that if the Debtor's financial situation did not improve after the period of deferment, the Debtor could reopen his case pursuant to Bankruptcy Rule 4007 (a) and (b). Id. *at* 1138. This Court believes that a similar remedy is appropriate for Mr. Simmons. The U.S. Department of Education recommended deferral in both its Trial Brief and in closing arguments. Mr. Simmons expressed concern that deferral would not stop interest from

running and, accordingly, more money would be owed at the end of the deferral period.  Because the Court has already determined that a discharge cannot be granted at this time, limited remedies are available for Mr. Simmons. Deferral is one of the few remedies available and may provide Mr. Simmons with some relief from his current stress.

This Court will enter an Order granting Mr. Simmons a four-year deferral of payments on his student loans to December 1, 2009. If Mr. Simmons believes that he is need of further relief from the Court at the end of the deferral period, he may petition this Court accordingly.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###